# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

23-CV-5821 (RER) (JRC)

———————————

SCHMIDT

VERSUS

AMERICAN PACKAGE COMPANY, INC. ET AL.

———————————

**MEMORANDUM & ORDER**

January 8, 2024

———————————

**RAMÓN E. REYES, JR., U.S.D.J.:**

Pro se plaintiff Sally Schmidt ("Plaintiff" or "Schmidt") brings this action for civil remedies under the Racketeer Influence and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962. Schmidt alleges that her building owner, along with its associates and attorneys engaged in various forms of misconduct aimed at unlawfully evicting her from her apartment. (*See* ECF No. 1). Defendants are American Package Company, Inc., Martin C. Kofman, Irene Kofman, Michelle Kofman, Violet Lautan, Michael Bobick, and Parker Rothman (collectively, the "APC Defendants"), in addition to Harry Shapiro ("Shapiro," and together with APC Defendants, "Defendants"). [1] Shapiro and APC Defendants have moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 24 ("Shapiro's Mot."); ECF No. 28 ("APC Def.'s Mot.")). In her response, Plaintiff has cross-moved to have all attorneys disqualified (*See* ECF

---

[1] In the Amended Complaint (ECF No. 10), when reciting the parties, Plaintiff names the Loft Board. (Am Compl. ¶ 6). However, the Loft Board has not been joined in the action. Accordingly, it is not bound by this Order.

No. 33 ("Pl.'s Response")), which APC Defendants and Shapiro oppose (ECF Nos. 35 ("Shapiro's Reply"), 38 ("APC Def.'s Reply")). After carefully reviewing the record, and for the reasons set forth herein, the Court grants APC Defendants' and Shapiro's motions to dismiss and denies Plaintiff's motion for disqualification.

## **BACKGROUND[2]**

I.    Factual Background

Plaintiff is a German citizen and United States resident who has lived in Unit G4 (the "Unit") of 226 Franklin Street AKA 97 Green Street, Brooklyn, New York 11222 (the "Building") for approximately a decade. (ECF No. 10 ("Am. Compl.") ¶¶ 1–3, 14–15). Defendants Martin C. Kofman ("Martin"), Irene Kofman, and Michelle Kofman own American Package Company ("Owner"), which is a New York corporation that owns the Building. (*Id.* ¶¶ 5, 7; ECF No. 28-28 ("APC Def.'s Mem.") at 2). Defendant Violet Lautan

---

[2] "Generally, under [Rule] 12(d), where matters outside the pleadings are presented in connection with a Rule 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under [Rule] 56." *Intelligent Digital Sys., LLC v. Beazley Ins. Co.*, 906 F. Supp. 2d 80, 89 (E.D.N.Y. 2012) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)). However, "the Second Circuit has recognized that district courts may consider the following materials outside the complaint in deciding a Rule 12(b)(6) motion" without requiring such conversion: "(1) 'documents attached to the complaint as an exhibit or incorporated in it by reference'; (2) 'matters of which judicial notice may be taken'; and (3) 'documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.'" *Frederick v. Jetblue Airways Corp.*, No. 14-CV-7238 (DLI) (RER), 2016 WL 1306535, at *3 (E.D.N.Y. Mar. 31, 2016) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)), *aff'd*, 671 F. App'x 831 (2d Cir. 2016); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (noting that courts may consider a document not incorporated by reference "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint," but "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment.") (quotations omitted).

Here, Plaintiff and various Defendants have been parties to multiple proceedings both in state and federal courts that are all relevant to the current action. As these are all a matter of public record, the Court may take judicial notice of the previous actions. Further, Plaintiff mentions the prior actions in the Amended Complaint. Some of these actions are included in Plaintiff's exhibits, but for ease, APC Defendants and Shapiro have attached copies of the relevant proceedings and corresponding documents as separated, numbered or lettered exhibits. (*See* ECF No. 24-1 ("Shapiro Decl."), Exs. A–DD; ECF No. 28-1 ("Bobick Decl."), Exs. 1–26). Therefore, because the Defendants' exhibits are a matter of public record and are integral to and incorporated in the Amended Complaint, the Court will rely on them in deciding the current Motions.

("Lautan") officially holds the title of secretary, but allegedly is an executive of Owner. (Am. Compl. ¶ 8). Michael Bobick ("Bobick") and Parker Rothman are attorneys with the firm Belkin, Burden, & Goldman LLP ("BBG"), which has previously represented Owner in matters related to Plaintiff. (*See, e.g.*, ECF No. 28-1 ("Bobick Decl."), Ex. 7). Defendant Shapiro is an attorney with the firm Smith & Shapiro P.C.[3] (ECF No. 24-32 ("Shapiro's Mem.") at 2). In this case, APC Defendants are represented by Jay B. Solomon and Mark Nathan Antar, who work at BBG, and Shapiro represents himself through his law firm Smith & Shapiro. (*See* ECF Nos. 23, 26).

The Building is an "Interim Multiple Dwelling" ("IMD"). (*See* Am. Compl. at 2, 6). In 1982, the New York State legislature passed Article 7 of the Multiple Dwelling Law (the "Loft Law") to create a new class of buildings, known as IMDs. N.Y. Mult. Dwell. Law §§ 280, 281. An IMD is a building that was at one time used for manufacturing, commercial, or warehouse purposes and is now occupied for residential purposes but lacks proper certificates of compliance. *Id.* § 281. In other words, an IMD is a building that was illegally converted for residential use, and the goal of the Loft Law is to work with building owners to perform construction to bring the building into compliance with state and city housing laws. *Id.* §§ 280, 281. The Loft Law also established the Loft Board, which manages the IMD legalization process and resolves disputes between IMD owners and tenants. *Id.* § 282. A key component of the legalization process is the "Narrative Statement," wherein IMD owners present construction plans, allow tenants to submit comment, and get Loft

---

[3] Although some of Plaintiff's exhibits indicate that Smith & Shapiro at some point represented Owner in various actions (*see, e.g.*, ECF No. 42 at 41, 53), nothing in the pleadings explains Shapiro's connection to the current action.

Board approval.[4] Prior to joining BBG In 2019, Bobick was assistant general counsel at the Loft Board, where he oversaw the Building's Narrative Statement. (Am. Compl. ¶ 51; ECF No. 39 ("Supp. Shapiro Decl.") ¶ 8).

According to the Amended Complaint, in order to avoid bringing the Building into compliance, Defendants acted unlawfully by proceeding with an ejection action and perpetrating organized violence against Plaintiff. (Am. Compl. at 1–2). The alleged Building violations include: (1) Owner has no certificate of occupancy for the Building pursuant to Multiple Dwelling Law § 302(1)(b), 325(2); (2) the Building is subject to multiple civil penalties, including Class A, B, and C violations, such as lead-based paint and asbestos presence; and (3) Owner failed to annually register the Building pursuant to the Department of Housing Preservation and Development's requirements. (*Id.* at 3–4). Plaintiff asserts that Building tenants are extorted by Owner and Lautan because they are lured into the promise of a good apartment, only to then become subject to "dangerous" and "filthy" living conditions. (*Id.* at 5). Further, Plaintiff claims that Owner is "profiteering and money laundering" through the Building and that she was discriminated against by Defendants due to her German citizenship. (*Id.* at 7, ¶¶ 22–25).

As explained further below, in 2015, Owner brought an ejectment action against Plaintiff, which ultimately resulted in a judgment in Owner's favor. (Bobick Decl., Ex. 7). Around the same time, four individuals sued Plaintiff for unlawfully subleasing to them. (ECF No. 24-1 ("Shapiro Decl."), Ex. D). Subsequently, in 2017, Owner brought another action against Plaintiff seeking a preliminary injunction and damages for Plaintiff's unlawful conversion of electricity, among other claims. (Shapiro Decl., Ex. G). Plaintiff

---

[4] *Process*, NYC Loft Board, 2023, https://www.nyc.gov/site/loftboard/process/process.page.

claims that these three actions were filed "as part of the hate crime," to harass Plaintiff, and to avoid Building compliance. (Am. Compl. ¶ 35). Likewise, Plaintiff asserts that the 2015 ejectment action was "designed to commit fraud" because Owner does not have a Certificate of Occupancy, which means that it lacks standing to bring the ejectment action. (*Id.* ¶ 16).

As part of the campaign of harassment, Plaintiff alleges that Defendants breached an unspecified contract with Plaintiff that was executed in September 2014.[5] (Am. Compl. ¶ 16). Further, Plaintiff states that Martin controls the electricity in the Building through one single meter so that he can illegally sell the electricity to each tenant at his chosen price. (*Id.* ¶ 17). What is more, Plaintiff claims that Martin regularly turns off the electricity to control the tenants, that Defendants sent a fake meter reading service to the units, and that the Building is not registered with the electricity provider Con Edison. (*Id.*). Plaintiff also asserts that APC Defendants do not pay adequate federal taxes and that they both disobey state court orders as well as obtain illegal judgments. (*Id.* ¶¶ 21, 26). In addition, Plaintiff claims that Bobick has a conflict of interest because he was a member of the Loft Board. (*Id.* ¶ 54). Finally, Plaintiff asserts that all of Defendants' actions have caused her a loss of employment "for over eight years" or since 2012, in addition to causing her health to decline. (*Id.* ¶¶ 33, 34).

II.    Procedural History

On June 22, 2015, Owner brought an ejectment action (the "Ejectment Action") against Plaintiff in the Supreme Court of the State of New York, County of Kings to recover possession of the Unit, alleging that Plaintiff owed past rent and was illegally subletting

---

[5] The Court believes this contract could be included in Plaintiff's exhibits (ECF No. 42 at 102–10).

portions of the Unit. (Am Compl. ¶ 15; Bobick Decl., Ex. 3). Around the same time, four of Plaintiff's subtenants commenced an action against her for illegally subleasing them space in the Unit. (Shapiro Decl., Ex. D; *see* Am. Compl. ¶ 35). In 2017, Owner again sued Plaintiff, but this time, for tampering with the electricity for the Unit. (Shapiro Decl., Ex. G; *see* Am. Compl. ¶ 35). The Supreme Court of Kings County issued an Order that prohibited Plaintiff from modifying any electrical panels, breakers, or wiring of the Unit or Building in any way. (*Id.*).

On September 26, 2018, the Supreme Court granted Owner's motion to strike Plaintiff's Answer in the Ejectment Action and ordered an inquest. (Bobick Decl., Ex. 6). Shortly thereafter, Hon. Miriam Sunshine, Special Referee of the New York Supreme Court, issued an Order (the "Ejectment Order") "awarding sole, exclusive and immediate possession" of the Unit to American Package Company, "directing the Sheriff of the City of New York to remove all persons in possession of" the Unit, and requiring Plaintiff to pay $316,121.73 for money owed and attorney's fees. (*Id.*, Ex. 7). Plaintiff moved to vacate the Ejectment Order, which was denied. (*Id.*, Ex. 8). The following year, on August 9, 2019, the New York Supreme Court entered judgment ("First Judgment of Possession") in favor of Owner. (*Id.*, Ex. 9).

On August 23, 2019, Plaintiff filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, automatically staying her ejectment pursuant to 11 U.S.C. § 362(a). (*Id.*, Ex. 10). The action was dismissed on October 24, 2019, for filing deficiencies. (*Id.*, Ex. 10). Around the same time, on September 24, 2019, Plaintiff filed an Order to Show Cause in the Ejectment Action, seeking to vacate the Ejectment Order and the First Judgment of Possession. (*Id.*, Ex. 11). As a result of the Order to Show Cause, Plaintiff

and Owner agreed to a two-attorney stipulation, which was entered by the New York Supreme Court and filed on November 25, 2019 (the "Stipulation"). (*Id.*, Ex. 12). Under the terms of the Stipulation, Plaintiff agreed to sell her rights under the Loft Law in the Unit to Owner for $5,000 and to surrender possession of the Unit to Owner on or before March 1, 2020. (*Id.*). Additionally, in the Stipulation, Plaintiff represented that she lived in the Unit alone and agreed not to sublet her rights. (*Id.*). Yet, on December 12, 2019, non-party Christopher Grimes moved by Order to Show Cause to stay any eviction of the Unit claiming that he had tenancy rights. (*Id.*, Ex. 13). Because Plaintiff was in breach of the Stipulation, Owner accelerated the eviction pursuant to the terms of the Stipulation. (*Id.*, Ex. 12).

Also on December 12, 2019, Plaintiff again filed for Chapter 7 bankruptcy. (*See Id.*, Ex. 14). This again automatically stayed any eviction pursuant to 11 U.S.C. § 362(a). Owner moved for stay relief, which the Bankruptcy Court granted on February 19, 2020. (*Id.*, Ex. 15). Before either Owner or Plaintiff could take any more steps, New York City shutdown due to the Covid-19 Pandemic.[6] Subsequently, on October 13, 2020, Owner moved by Order to Show Cause for judicial permission to execute the First Judgment of Possession. (*Id.*, Ex. 16). This request was denied due to the ongoing Pandemic and Executive Orders staying evictions. *See* COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 (S. 9114/A. 11181).

On January 12, 2021, Plaintiff filed a hardship declaration with the Supreme Court pursuant to the Covid-19 Emergency Eviction and Foreclosure Prevention Act of 2020, L

---

[6] *See At Novel Coronavirus Briefing, Governor Cuomo Declares State of Emergency to Contain Spread of Virus*, New York State, March 7, 2020, https://www.governor.ny.gov/news/novel-coronavirus-briefing-governor-cuomo-declares-state-emergency-contain-spread-virus.

2020, ch. 381, which afforded tenants protection from eviction during the pandemic. (Bobick Decl., Ex. 17). Plaintiff also filed an application under the New York Emergency Rental Assistance Program. (*Id.*, Ex. 18).

On February 7, 2022, since the First Judgment of Possession was issued prior to the start of the Covid-19 Pandemic, Owner filed a Motion to Restore the Ejectment Action. (*Id.*, Ex. 19). In July 2022, Plaintiff filed a second application under the Emergency Rental Assistance Program. (*Id.*, Ex. 20). On November 23, 2022, the New York Supreme Court issued an Order granting Owner's Motion to Restore and awarded it a new Judgment of Possession (the "Second Judgment of Possession"). (*Id.*, Exs. 21, 22). Plaintiff appealed the judgments and filed two Orders to Show Cause in the NYS Appellate Division, Second Department to stay the judgments, which was denied. (*Id.*, Ex. 23). On April 27, 2023, Plaintiff filed a third Order to Show Cause to stay enforcement of the Second Judgment of Possession, which was denied by Short Form Order. (*Id.*, Ex. 24).

Shortly thereafter, on May 1, 2023, Plaintiff filed her third Bankruptcy case under Chapter 13, which triggered another automatic stay of her eviction. (*See id.*, Ex. 25). The Bankruptcy Court granted Owner's request for stay relief on August 24, 2023. (*Id.*, Ex. 25). Subsequently, on July 26, 2023, Plaintiff filed an amended motion for leave to appeal the 2023 Bankruptcy Lift Stay Order pursuant to Rule 8004 of the Federal Rules of Bankruptcy Procedure, which was referred to this Court. (23-CV-5625 ("Bankruptcy Appeal"), ECF No. 1). Owner opposed Plaintiff's motion and cross-moved to dismiss the appeal. (Bankruptcy Appeal, ECF No. 4). While pending, the Bankruptcy Court dismissed the underlying action due to Plaintiff's failure to file schedules or a Chapter 13 plan.

(Bobick's Decl., Ex. 26; Bankruptcy Appeal, ECF No. 8-1). Accordingly, this Court dismissed the appeal as moot. (Bankruptcy Appeal, ECF No. 10).

While awaiting a decision regarding her bankruptcy appeal, on July 31, 2023, Plaintiff filed the present action, alleging that all Defendants worked in concert to unlawfully eject and harass Plaintiff, in violation of the civil RICO statute. (ECF No. 1). Plaintiff also seeks injunctive relief to prevent Defendants from continuing their harmful actions. (Am. Compl. ¶¶ 74–81). Shapiro and the APC Defendants moved to dismiss (Shapiro's Mot.; APC Def.'s Mot.). Plaintiff opposed Defendants' respective motions and cross-moved for disqualification of the attorneys representing Shapiro and APC Defendants. (Pl.'s Response).

## THE MOTIONS TO DISMISS

Plaintiff seeks damages for Defendants' alleged civil RICO violations and injunctive relief to prevent Defendants from taking further harmful actions. (*See generally* Am. Compl.). APC Defendants and Shapiro move to dismiss the complaint for failure to state a claim against them. (APC Def.'s Mot.; Shapiro's Mot.). Both parties assert that the civil RICO claims are time-barred. (APC Def.'s Mem. at 13–17; Shapiro's Mem. at 23–24). APC Defendants also argue that Plaintiff failed to state a claim for injunctive relief because she did not demonstrate a likelihood of success on the merits. (APC Def.'s Mem. at 28). Moreover, Shapiro asserts that he should be dismissed from the action overall because aside from being named in the case caption, no claim has been set out against him. (*See generally* Shapiro's Mem.). Plaintiff, on the other hand, argues that dismissal of this action is against the public's interest and federal law. (Pl.'s Response at 43).

I.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, a court "must accept as true all well-pleaded facts alleged in the [complaint] and must draw all reasonable inferences in the non-moving party's favor." *Magnacoustics, Inc. v. Integrated Computer Sols., Inc.*, No. 17-CV-4967 (RER), 2020 WL 4041310, at *3 (E.D.N.Y. July 17, 2020) (original alterations omitted) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013)). Moreover, as explained above, "it is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint." *Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*, No. 13-CV-3266 (JFB) (WDW), 2014 WL 672926, at *7, n.7 (E.D.N.Y. Feb. 20, 2014) (citing *Glob. Network Commc'ns. Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

II.     Plaintiff's Civil RICO Claims Are Time-Barred

In their respective motions to dismiss, Shapiro and APC Defendants argue that Plaintiff's civil RICO claims are time-barred because in the Amended Complaint, she refers to injuries occurring prior to 2019. (Shapiro's Mem. at 23–24; APC Def.'s Mem. at 13–17). Civil RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). "[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella*, 528 U.S. at 555; *see also Koch v. Christie's*

10

*Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011) (the statute of limitations "runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry.") (quoting *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 328 F. App'x 695, 697 (2d Cir. 2009) (summary order)), *aff'd*, 699 F.3d 141 (2d Cir. 2012). An injury is discoverable, triggering the running of the statute of limitations, when a plaintiff has actual or inquiry notice of the injury. *Koch*, 699 F.3d at 150–51. Inquiry notice is an objective standard, and "dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings." *Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 525 (S.D.N.Y. 2007) (quotations omitted), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

Here, Plaintiff alleges that as a result of Defendants' various actions, she suffered a loss of career and a decline in her health for the last eight years or, in the alternative, since 2012. (Am. Compl. ¶¶ 33–34). Furthermore, Plaintiff alleges that Defendants harassed and discriminated against her, as evidenced by the two lawsuits initiated against her in 2015 and the third in 2017. (Am. Compl. ¶ 35). If the injury alleged is the loss of career and a decline in health, then the injury first occurred either eight or eleven years ago. Alternatively, if the injury was harassment and discrimination, then Plaintiff would have been on inquiry notice at the very least by 2017, six years ago, when the third lawsuit was filed against her. Regardless, Plaintiff discovered her injuries well over four years ago. (*See, e.g.*, ECF No. 42 at 2–3) (2015 email from the Building's tenants' association that Lauten was unlawfully collecting tenants' mail and packages); (ECF No. 2-1 at 81) (Notarized statement from Plaintiff's private investigator that "Schmidt was inhumanely harassed throughout the years of 2017, 2018, and 2019."); (*Id.* at 88) (May 2017 letter

from Plaintiff's medical provider stating that Plaintiff "has been experiencing severe stress related to her housing and landlord situation"). Accordingly, Plaintiff's injuries not only began six, eight, or eleven years ago, but she was also on notice to inquire about RICO violations at that time. *See, e.g.*, *421-A Tenants Ass'n, Inc. v. 125 Court Street LLC*, 760 F. App'x 44, 49 (2d Cir. 2019) (affirming the dismissal of the tenants' rent-based RICO claims because the 2012 state action brought by the tenants sufficiently put the "reasonable tenant" on inquiry notice about additional claims). Therefore, Plaintiff's civil RICO claims are time-barred.[7]

## THE MOTION FOR DISQUALIFICATION OF DEFENDANT'S COUNSEL

Plaintiff cross-moves to disqualify all counsel from the action due to various purported conflicts of interest and unethical behavior. (*See* Pl.'s Response). Shapiro and APC Defendants argue that Plaintiff has failed to meet her burden of proof to disqualify their counsel. (Shapiro's Reply at 1–4; APC Def.'s Reply at 7–10).

I.   Legal Standard

"It is well established that the Court's authority to disqualify an attorney stems from its general supervisory power over the attorneys appearing before it." *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 303–04 (E.D.N.Y. 2005) (citing *United States v. Hammad*, 846 F.2d 854, 857–58 (2d Cir. 1988), *cert. denied,* 498 U.S. 871 (1990)). In turn, a court may disqualify an attorney to prevent the violation of ethical principles. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). While this power is discretionary, "any doubt is to be resolved in favor of disqualification." *Shabbir*, 443 F.

---

[7] As Plaintiff's civil RICO claims are time-barred and dismissed, the Court need not address the question of whether Plaintiff has adequately pleaded a claim for injunctive relief. (*See* Am. Compl. ¶¶ 66, 73–81; APC Def.'s mem. at 28).

12

Supp. 2d at 304 (quoting *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)). However, motions to disqualify counsel are generally disfavored because the result leads to "an immediate adverse effect on the client by separating him from counsel and because such motions are often interposed for tactical reasons . . . and inevitably cause delay." *Galloway v. Nassau County*, 569 F. Supp. 3d 143, 147 (E.D.N.Y. 2021) (quoting *Bd. of Educ. V. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). As such, motions for disqualification are "subjected to heightened scrutiny." *Id.* (citation omitted). Thus, "the party seeking disqualification must meet a heavy burden of proof in order to prevail." *Gormin v. Hubregsen*, No. 08 Civ 7674 (PGG), 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) (quotations omitted).

When deciding a motion to disqualify counsel, a court may look toward the American Bar Association and New York State Code of Professional Responsibility, but "such rules merely provide general guidance." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citations omitted). Instead, "the only truly binding authority on disqualification issues is [Second] Circuit precedent." *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2007 WL 1599151, at *3 (S.D.N.Y. June 4, 2007) (citation omitted). Accordingly, disqualification of an attorney is appropriate "only if the facts present a real risk that the trial will be tainted." *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (citing *Nyquist*, 590 F.2d at 1246); *see also M&T Mortg. Corp. v. White*, No. 04-CV-4775 (NGG) (VVP), 2007 WL 2816186, at *3 (E.D.N.Y. Sept. 26, 2007) ("Even when such a situation is implicated, however, disqualification is unwarranted unless there exists a significant risk of trial taint.") (quotations omitted).

One form of "taint" arises when "the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter." *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (citing *Nyquist*, 590 F.2d at 1246). In cases where representation is successive, an attorney may be disqualified if (1) "the moving party is a former client of the adverse party's counsel;" (2) "there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit;" and (3) "the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Hempstead Video, Inc.*, 409 F.3d at 133 (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). Furthermore, one attorney's conflicts are "ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidence." *Id.*

II.     The Alleged Conflict of Interest

In support of disqualification, Plaintiff raises seventeen arguments.

First, Plaintiff asserts that Bobick has a conflict of interest due to his prior work for the Loft Board, which is imputed on both firms.[8] (*Id.* ¶¶ 11–27). From 2014 to 2019, Bobick worked as Assistant General Counsel to the Loft Board. (Am. Compl. ¶ 51; Supp. Shapiro Decl. ¶ 8). Thereafter, he was hired by BBG, where he continues to work. (Am. Compl. ¶¶ 50–56; Pl.'s Response ¶ 103). BBG was retained by Owner in 2015 for the Ejectment Action against Plaintiff and has represented Owner in subsequent actions related to

---

[8] The Court notes that Bobick has never worked with Smith & Shapiro.

In brief, Plaintiff also alleges that the lawyers are necessary witnesses, and thus should be disqualified. (Pl.'s Response ¶ 24). However, the disciplinary rules concern "an attorney's presence at trial," and are "not implicated by participation in pre-trial matters." *Gormin*, 2009 WL 509269, at *3 (quotations omitted). Accordingly, the concern of an attorney-as-witness is only implicated if the case were to move forward to trial. (*Id.*).

Plaintiff. (*See, e.g.*, Bobick Decl., Ex., 7; s*ee also* Bankruptcy Appeal). While at the Loft Board, Bobick oversaw the Narrative Statement for the Building. (Pl.'s Response ¶ 12). Plaintiff asserts that during his time there, Bobick helped Owner secure fake permits and that while working at BBG, he falsified statements in prior proceedings against her. (*Id.* ¶¶ 12, 16). Further, Plaintiff alleges that BBG never disclosed the conflict during the actions in state court. (*Id.* ¶¶ 102–113).

Plaintiff has failed to meet her burden for disqualifying opposing counsel. Turning to the first of the Second Circuit's three factors for determining whether a conflict of interest for successive representation exists, Plaintiff was not a former client of Bobick. Second, although Bobick's responsibilities both at the Loft Board and at BBG have involved the Building, Owner, and Plaintiff, there is not a substantial relationship between the subject matter. Bobick's role at the Loft Board included oversight of the Building's Narrative Statement, which included construction plans and communication between tenants and Owner. (Pl.'s Response ¶ 16; ECF No. 41-1 at 6–200). By contrast, BBG represented Owner in ejectment actions, the action related to improper utility use, and Plaintiff's bankruptcy actions, as well as representing the APC Defendants in the current action. (*See, e.g.*, Bobick Decl., Ex., 7; s*ee also* Bankruptcy Appeal). These are inherently different legal matters that rest of different sets of facts. Third, any information that Bobick had access to while employed at the Loft Board was neither privileged nor confidential. Further, the Narrative Statement process is all a matter of public record.[9] Accordingly, no conflict of interest exists.

---

[9] *See FOIL Requests*, NYC Loft Board, 2023 https://www.nyc.gov/site/loftboard/about/foil.page (instructing how to access Loft Board records).

The Court takes notice of the fact that Bobick admitted to a conflict-of-interest violation and paid a fine to resolve the matter, but those violations are not relevant to the case at hand.[10] Moreover, this is not the first Court to find that Bobick's work with the Loft Board and at BBG does not present a conflict of interest. When two of the Building's tenants were before the New York City Office of Administrative Trials and Hearings to resolve a dispute wherein they refused to let Owner's construction workers in their unit to complete work pursuant to the IMD legalization process, the tenants moved to disqualify BBG for a conflict of interest due to Bobick's past work at the Loft Board. *Matter of American Package Company, Inc.*, OATH 1991/20 at 2–3 (Dec. 8, 2020). There, the Administrative Law Judge ("ALJ") found that no conflict existed because there was no attorney-client relationship between Bobick and the tenants, Bobick's work at the Loft Board and the action before the ALJ were not substantially related, the interests of the tenants and the Loft Board were not materially adverse, and all information that Bobick received at the Loft Board was publicly available. *Id.* at 2. Therefore, here, Bobick's past work at the Loft Board does not present a conflict of interest.

In addition, Plaintiff argues that BBG and Smith & Shapiro should be disqualified because (1) both firms represent Owner knowing that the Building is out of compliance (Pl's Response ¶¶ 8–9); (2) Plaintiff was the victim of notary fraud because BBG drafted

---

[10] Prior to leaving the Loft Board, Bobick contacted the New York City Conflicts of Interest Board (the "COIB") to discuss how to handle a potential conflict if he were to join BBG. *Conflicts of Interest Bd. v. Bobick*, COIB Case No. 2019-385, ¶ 1(b) (2020). The COIB informed Bobick that, pursuant to City Charter § 2604(d)(2), for one year after leaving City employment, he would not be able to communicate with his former agency. *Id.* In his first year with BBG, however, Bobick sent two letters to the Department of Buildings Brooklyn Borough Commissioner. *Id.* ¶¶ 1(e), (f). Bobick reported his own misconduct, stating that he had believed that only communication with the Loft Board would violate City Charter § 2604(d)(2). *Id.* ¶¶ 1(g)(i). The COIB then commenced an enforcement action against Bobick, alleging his violation of City Charter § 2604(d)(2). *Id.* at preamble. Consequently, Bobick agreed to a Stipulation and Disposition, admitting to his mistake and agreeing to pay a fine of $1,800. *Id.* ¶¶ 2, 3(a).

an affidavit and forged her signature (Pl.'s Response ¶¶ 28–33); (3) Owner and Lautan, withheld and tampered with her mail (Pl.'s Response ¶¶ 34–37); (4) the firms represented Owner knowing that tenants are exposed to asbestos, lead, and other hazardous substances (*id.* ¶¶ 38–42); (5) Lautan and Owner have participated in illegal eviction notices and evictions, using the law firms to carry out the unlawful acts (*id.* ¶¶ 43–45); (6) Owner collected illegal rent from Plaintiff during the legalization process in addition to declining rent payments so that it could sue for nonpayment (*id.* ¶¶ 46–47); (7) all Defendants harassed and discriminated against Plaintiff for her German citizenship (*id.* 48–50); (8) it is unethical for Defendants to act as they have because they are attempting to eliminate the middle class (*id.* ¶¶ 51–57); (9) after Plaintiff filed the Complaint in the current action, Defendants participated in a retaliatory hate crime against her (*id.* ¶¶ 58–101); (10) all Defendants and their counsel are aware of "heavy money laundering" through the Building (*id.* at 35–36); (11) the number of illegal apartments in the Building continues to grow (*id.* at 36); and (12) the attorneys abused their knowledge of the court system to take advantage of Plaintiff (*id.*). While these allegations are troubling if true, they form the basis of other various claims, such as fraud or mail theft, but they are irrelevant to a motion to disqualify counsel. The appearance of impropriety, on its own, without the risk of trial taint, is "too slender a reed on which to rest an order disqualifying an attorney." *Nyquist*, 590 F.2d at 1247.

Lastly, Plaintiff argues that Shapiro's memorandum of law in support of his motion to dismiss is unprofessional because he argues that aside from the case caption, his name is not mentioned once in the Amended Complaint, and as such, no claim is formed against him. (Pl.'s Response at 36; *see also* Shapiro's Mem.). Whether Shapiro makes

17

an invalid argument in his motion to dismiss, however, is not grounds for disqualification. A lawyer has a duty to diligently represent their client, which includes making any legal arguments available to them. *See* N.Y. Code of Professional Responsibility § 1.3. Regardless, nothing in Shapiro's memorandum of law is improper. A mere disagreement over the argument does not warrant disqualification.

In sum, Plaintiff's arguments do not meet the standard to disqualify an opposition party's counsel, and Bobick's previous employment does not present a conflict of interest. Therefore, Plaintiff's motion to disqualify BBG and Simon & Shapiro is denied.

## **CONCLUSION**

For the reasons set forth above, the Court grants both Shapiro's and APC Defendant's Motions to Dismiss and denies Plaintiff's Motion to Disqualify Counsel. The Clerk of the Court is respectfully instructed to enter judgment and close this case.

SO ORDERED.

Hon. Ramón E. Reyes, Jr.      Digitally signed by Hon. Ramón E. Reyes, Jr.
                             Date: 2024.01.08 16:07:12 -05'00'

RAMÓN E. REYES, JR.
United States District Judge

Dated: January 8, 2024
Brooklyn, NY

18